UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHARLES OWENS ROBERTS<br><br>VERSUS<br><br>MEDICAL DIRECTORS/DOCTORS<br>MR. R. D. INGLESE; MR. FRENCH | CIVIL ACTION NO.:  14-1450<br><br>SECTION:  "I"<br><br>MAGISTRATE:  01<br><br>JURY DEMAND |

**<u>MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
PURSUANT TO RULE 56(b)
OF FEDERAL RULES OF CIVIL PROCEDURE</u>**

**MAY IT PLEASE THE COURT:**

## <u>Introduction</u>

*<u>Factual Background</u>*[1]

On March 20, 2014, plaintiff Charles Owens Roberts was arrested on suspected parole violations by officers of the Covington District Office of the State Department of Public Safety & Corrections, Division of Probation & Parole.  He previously had been convicted of felony stalking and failure to report his status as a sex offender, had served a portion of his sentence, and then been placed on parole.  Shortly thereafter, the plaintiff waived his right to a formal revocation hearing and pled guilty to the violation.  The State Board of Pardons and Parole, on April 3, 2014, revoked his parole, and he began serving the remainder of his sentence.

---

1  This section is based on the defendants' Statement of Uncontested Material Facts accompanying the instant motion.  References to the supporting evidence are contained in that Statement and are not duplicated here.

Consequently, from March 20, 2014 until January 6, 2015, when the plaintiff was transferred to a D.O.C. facility, the plaintiff was in the custody of St. Tammany Parish Sheriff Jack Strain and being held at the St. Tammany Parish Jail.  During that time, he received health care from the staff of the Jail Medical Department, including the two named defendants herein: R. Demaree Inglese, M.D. (who serves as the Director of the Department) and Gary French, M.D.

On June 23, 2014, the plaintiff filed the present Complaint, asserting that he was receiving inadequate/improper medical treatment from Dr. Inglese and Dr. French, for a rather lengthy list of medical conditions from which he allegedly suffers.  These conditions include upper back/neck pain, astigmatism, glaucoma, and cataracts, as well as a need for dietary supplements, a particular type of multivitamin tablet, and "small white bath towels" (Rec. doc. 1, at p. 10).

*Summary of Argument*

Based on the above factual scenario, the plaintiff claims that the medical treatment provided to him by Dr. Inglese and Dr. French was so inadequate as to constitute a violation of the constitutional protection against "cruel and unusual punishment" found in the Eighth Amendment.  But his entire case is built around a single, completely unjustified and legally faulty assumption: The belief that simply because he disagrees with the medical care provided to him, the defendants somehow committed a juridically-viable constitutional violation.  Yet he offers no evidence whatsoever apart from his own self-serving and totally unsupported assertions to support such a finding, which would require proof of reckless disregard and deliberate indifference on the part of either defendant.  Further, he offers no expert testimony to support his assertions of inadequate/improper treatment.

On October 30, 2014, the defendants propounded sets of interrogatories and requests for production to the plaintiff, seeking disclosure of the evidence supportive of his claim. To date, the defendants have received absolutely no responses to those discovery devices, despite the plaintiff being personally instructed to do so by this Honorable Court's staff attorney during the telephone status conference conducted on September 30, 2014. So it must be assumed that there is no such evidence.

The defendants' arguments herein are based exclusively on the application of simple legal principles, as opposed to contested factual issues, and are unlikely to be impacted by any further discovery. Lastly, the defendants acknowledge the basic factual scenario set out in the plaintiff's pleadings and the plaintiff has failed to tender any additional facts demonstrative of legal culpability on the part of either of the defendants. Thus, this matter is perfect for resolution by summary judgment.

## **Summary of Relevant Facts**

As part of this motion, the defendants have attached a Statement of Uncontested Material Facts, as is required by local rule. The Statement sets out both the relevant factual context of the plaintiff's lawsuit and the important facts relative to the specific defenses advanced herein. It is supported by reference to the relevant pleadings as well as the exhibits supporting the motion, which are also attached to the motion. The defendants hereby adopt and incorporate by reference that Statement, and they refer the Court to the Statement and the exhibits for the facts necessary to decide this motion.

## **Summary Of Supporting Evidence**

Although a substantial portion of the relevant facts have already been conceded by the plaintiff, the defendants submit the following items in support of this motion:

1. Plaintiff's Jail Administrative File (Exhibit "A");

2. Affidavit of Warden Longino (Exhibit "B");

3. Plaintiff's Jail Medical File (Exhibit "C");

4. Affidavit of Dr. Inglese (Exhibit "D");

This documentation, along with the pleadings in this matter, clearly and fully support the facts set out in this Motion and serve to demonstrate that the plaintiff's claims are barred in their entirety by the qualified-immunity defense urged herein and/or by the plaintiff's failure to complete the Jail's ARP prior to filing this lawsuit.

## Law and Argument

### 1. The Standard For Granting Summary Judgment, Both In General And In The Context Of An Assertion Of Qualified Immunity.

#### a. Summary Judgment in General

As this Honorable Court is certainly already aware, Rule 56 of the Federal Rules of Civil Procedure authorizes and governs the motion for summary judgment in federal court. It mandates that a granting of summary judgment is appropriate "if the movant shows that [(1)] there is no genuine dispute as to any material fact and [(2)] the movant is entitled to judgment as a matter of law."[2] In the nearly 80 years since the enactment of Rule 56, a massive body of jurisprudence has arisen regarding its application. Some of the principles contained in that case law are repeated in a rote, mantra-like fashion in brief after brief, opinion after opinion, without any genuine discussion of what those principles mean to the

---

2   Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012); *Roberts v. Cardinal Services, Inc.*, 266 F.3d 368, 373 (5th Cir. 2001), *cert. denied* 535 U.S. 954, 122 S.Ct 1357, 152 L.Ed.2d  353 (2002); *Alfonso-Ferro v. Stolthaven New Orleans, L.L.C.*, 2005 WL 1309133, *2 (E.D.La. 2005).

case at hand.  What follows is a summation of several of those principles that have particular relevance to this motion, along with a brief explanation of that relevance.

- As a general rule, the moving party has the initial burden under Rule 56 of establishing that there are no issues of material fact and that it is entitled to judgment in its favor as a matter of law.[3]  But, even under this general rule, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion.  Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude summary judgment.[4]  This principle is important here because the defendants anticipate that the plaintiff will respond to this motion by pointing to issues of fact that he asserts are still in dispute.  But, even assuming he can do so, those facts must be actually relevant to the defendants' argument.  If not, they should be ignored.

- Once the mover's initial burden is satisfied, the party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' and must designate 'specific facts showing that there is a genuine issue for trial.'"[5]  A fact is material for purposes of summary judgment _only_ if it might affect the outcome of the suit under the governing law, and a fact is genuinely in dispute _only_ if a reasonable jury find for

---

3   *Breen v. Texas A&M University*, 485 F.3d 325, 331 (5th Cir. 2007); *Rivera v. Houston Independent School District,* 349 F.3d 244, 246-47 (5th Cir.2003).

4   *Taita Chemical*, *supra*.  *See also Roberts, supra*; *Condiff v. R.D. Werner Company, Inc.*, 2003 WL 21977167, *1 (E.D.La. 2003).

5   *Celotex Corporation v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), quoting Fed.R.Civ.P. 56(e).  *See also Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006); *In re Ark-La-Tex Timber Company, Inc.*, 482 F.3d 319 (5th Cir. 2007).

the nonmoving party based on the evidence submitted.[6]  Thus, the plaintiff here cannot simply rest on the allegations in his pleadings in the face of this motion; "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party . . . . If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[7]

- Conclusory allegations unsupported by specific facts will not prevent granting of summary judgment; the plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint.[8]  In fact, the Fifth Circuit requires the nonmoving party to tender what it has called "significant" and "probative" evidence in order to rebut a properly-supported summary-judgment motion.[9]  And, once again, conclusory allegations and unsubstantiated assertions by the nonmovant simply are not sufficient.[10]  Since, as has already been discussed and will be spelled out further below, "conclusory allegations" and "unsubstantiated assertions" make up the bulk of the plaintiff's claims, this case is one that is especially ripe for summary judgment.

---

6   *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

7   *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).  See also *Celotex Corporation*, *supra* at 325-26, 106 S.Ct. at 2554.

8   *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010), *cert. denied* --- U.S. ---, 131 S.Ct. 355, 178 L.Ed.2d 149 (2010); *National Association of Government Employees v. City Public Service Board*, 40 F.3d 698, 713 (5th Cir. 1994).

9   *Whitt v. Stephens County*, 529 F.3d 278, 283 n. 8 (5th Cir. 2008).

10  *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 345 (5th Cir. 2007); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).

- This burden placed on the non-mover to offer countervailing evidence in the face of a properly-supported motion for summary judgment is a heavy one. In fact, one court has expressed it rather bluntly:

    > When the motion [for summary judgment] is made, we go beyond the paper allegations of the pleadings, which were enough to survive the common law demurrer. The time has come, as James and Hazard put it, "to put up or shut up." Fleming James, Jr. & Geoffrey C. Hazard, Jr., *Civil Procedure* 150 (2d ed.1977). Accordingly, unsupported allegations [by a plaintiff] do not create a material issue of fact.[11]

    Pursuant to this authority, right now is the time for plaintiff "to put up or shut up," i.e., to tender legitimate, substantive evidence in support of his position or be prepared to go home.

    b. **Summary Judgment in the Context of a Qualified-Immunity Defense**

    These general rules regarding summary judgment are even further manifest when dealing with claims asserted under § 1983 where, like here, the defendants raise qualified immunity as a defense. As summarized by one court:

    > The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *Cf. Gates v. Texas Dep't of Protective and Regulatory Servs.,* 537 F.3d 404, 419 (5th Cir.2008). Although qualified immunity is called an affirmative defense, the defendant asserting qualified immunity does not have the burden to establish it. Rather, *it is the plaintiff whose burden it is to negate the assertion of qualified immunity, once it is raised. Collier v. Montgomery,* 569 F.3d 214, 217 (5th Cir.2009). An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *See Michalik v. Hermann,* 422 F.3d 252, 262 (5th Cir.2005)(citing *Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir.2001)). The plaintiff, bearing the burden of negating the defense, cannot rest on conclusory allegations and assertions, but must

---

11   *Weinstock v. Columbia University*, 224 F.3d 33, 41 (2nd Cir. 2000), *cert. denied* 540 U.S. 811, 124 S.Ct. 53, 157 L.Ed.2d 24 (2003). *See also Ankum v. White Consolidated. Industries*, 1992 WL 236961, *5 (E.D.La. 1992)("The party moving for summary judgment need not negate an element necessary for the other's case; he simply can ask the other party to 'put up or shut up.' The opposing party then *must* go beyond the pleadings and offer proof of his claim.")(emphasis added).

demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct.  *Id.*[12]

Thus, in order to prevail on the instant motion, the defendants need not resolve every possible factual dispute or answer every possible question about the plaintiff's allegations, particularly in light of their assertion of qualified immunity.  They instead are required to present, address, and demonstrate only those uncontradicted facts necessary to defeat an essential element the plaintiff's cause of action or establish a *prima facie* defense, in light of the analysis discussed below.  Because they clearly can do so in this case, and because the plaintiff has no relevant evidence to rebut it, this motion should be granted and the plaintiff's suit dismissed.

## 2.   Dr. Inglese And Dr. French Are Entitled To Qualified Immunity.

### a.  The Qualified Immunity Doctrine In General

The doctrine of qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[13]  In making application of qualified immunity, it is critically important to remember that the role of the Court is <u>not</u> to determine whether the "government official" – in this case, Dr. Inglese and Dr. French – came to the correct

---

[12]   *Tolan v. Cotton*, 854 F.Supp.2d 444, 463 (S.D. Tex. 2012)(emphasis added), *affirmed* 713 F.3d 299 (5th Cir. 2013), *reversed on other grounds* --- U.S. ---, 134 S.Ct. 1861, 188 L.Ed.2d 895 (2014). *See also Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) *cert. denied,* --- U.S. ---, 132 S.Ct. 2433, 182 L.Ed.2d 1062 (2012)(in response to defendants' motion for summary judgment"[t]he burden is on the [plaintiffs] to rebut the officers' qualified-immunity defense by establishing a genuine fact issue . . . .").

[13]   *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Luna v. Mullenix*, 765 F.3d 531, 536 (5th Cir. 2014).

conclusion.[14]  "Instead, the focus of qualified immunity is on what the official reasonably perceived, and the court is not to look at the actions with the benefit of hindsight."[15]  As the U. S. Supreme Court declared:

> The calculus of reasonableness [in a § 1983 case] must embody allowance for the fact that [government actors] are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about [what] is necessary in a particular situation.[16]

In other words, application of qualified immunity in this matter does not require the Court to consider whether the defendants' actions represented "the best case scenario" or that there weren't any possible alternatives.  Instead, the standard of reasonableness to be used here is more along the lines of "Do the defendants' actions make sense in light of the particular factual scenario with which they were faced?"  The defendants here are fully convinced that the only responsible answer to that question is an emphatic "Yes."

Also important to note is what the Fifth Circuit has often expressed regarding the defense of qualified immunity.  "Because qualified immunity constitutes an immunity from suit rather than a mere defense to liability, adjudication of a defendant's entitlement to qualified immunity should occur at the earliest possible stage in litigation."[17]  Another division of this Honorable Court has declared:

> Because qualified immunity constitutes immunity from a lawsuit, rather than a mere defense to liability, the defense is intended to give public officials

---

14    *Brown v. Ray*, 695 F.Supp.2d 292, 304 (W.D. Va. 2010).

15    *Id.*

16    *Graham v. Connor*, 490 U.S. 386, 396-97, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (U.S. 1989).  *See also Rice v. ReliaStar Life Insurance Co.*, 770 F.3d 1122, 1130 (5th Cir. 2014); *Clayton v. Zullo*, 2014 WL 790869, *7 (E.D.La. 2014).

17    *Kitchen v. Dallas County, Tex.*, 759 F.3d 468, 476 (5th Cir. 2014)(internal quotation marks omitted).  *See also McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)(quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).

immunity from disruptive and burdensome pretrial matters such as discovery.[18]

In this case, full discovery has already been attempted but stymied by the plaintiff's unresponsiveness and trial on the merits is set for June 1, 2015, thus heightening the concern for a swift resolution.

"To determine whether a defendant is entitled to qualified immunity, the court engages in a two-pronged analysis, inquiring (1) whether the plaintiff has alleged a violation of a constitutional right and, if so, (2) whether the defendant's behavior was objectively reasonable under clearly established law at the time the conduct occurred."[19] This bifurcated legal standard, which after *Pearson v. Callahan*,[20] can be considered in either sequence, is designed both to promote clearer standards for official conduct and to spare the defendants unwarranted liability and court costs.[21]

Once a qualified immunity defense is asserted, as the defendants certainly have done in this case,[22] the burden actually shifts to the plaintiff to rebut it.[23]  And, not only does the burden of persuasion shift but in the face of the assertion by a defendant public official of the defense of qualified immunity, a § 1983 plaintiff must comply with a

---

18   *Morice v. City of Gretna*, 2015 WL 222319, at *4 (E.D.La. 2015)(Lemelle, J.).

19   *Hampton v. Oktibbeha County. Sheriff Dept.,* 480 F.3d 358, 363 (5th Cir.2007); *Williams v. Champagne*, 2014 WL 1365940, *4 (E.D.La. 2014).

20   555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).  *See also Tolan v. Cotton*, --- U.S. ---, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014).

21   *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); *Palmer v. Johnson,* 193 F.3d 346, 351 (5th Cir. 1999).  And, as already noted above, the defense of qualified immunity is designed to protect the defendants not only against liability but also against having to offer a full defense to a suit.  *Spann v. Rainey*, 987 F.2d 1110 (5th Cir. 1993).

22   "Defendants' Answer and Defenses to Plaintiff's Complaint" (Rec. doc. 4), at p. 3 (Twelfth Defense).

23   *Hampton*, supra.  *See also Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)(en banc), *cert. denied* 537 U.S. 1232 (2003).

heightened pleading standard. This heightened pleading standard "requires more than conclusionary assertions. It requires claims of specific conduct and actions giving rise to a constitutional violation."[24]

To summarize, qualified immunity does not require strict constitutional compliance with a standard of behavior imposed after-the-fact with the benefit of hindsight; it only requires reasonable objectivity judged on the circumstances at the time, and the defendants are protected from liability even if they acted erroneously, yet reasonably.[25] Further, "Section 1983 imposes liability for violations of rights protected by the Constitution, not violations of duties of care arising out of tort law."[26] Thus, the standard that must be met by the plaintiffs here is one of objective unreasonableness, not simply negligence or improper choice.

In this matter, the plaintiff has insurmountable problems as to both prongs of the test. He certainly has failed to offer any specific facts that, on their face, evidence the irrationality or unreasonableness of the treatment provided to him. Rather, the evidence reflects that the plaintiff was afforded more-than-adequate medical care by the defendants, a level of care far exceeding that required by the Constitution. As a result, his lawsuit against Dr. Inglese and Dr. French should be dismissed on that basis alone.

---

24  *Burge v. Stalder*, 54 F. Appx. 793 (5th Cir. 2002); 2002 WL 31845179, *3, citing *Baker v. Putnal,* 75 F.3d 190, 195 (5th Cir.1996). *See also Harold v. City of New Orleans,* 2008 WL 5216223, *2 (E.D.La. 2008)(Duval, J.).

25  *Anderson v. Creighton,* 483 U.S. 635, 641 (1987).

26  *Baker v. McCollan*, 443 U.S. 137, 146 (1979); *Rankin v. Wichita Falls*, 762 F.2d 444, 448 (5th Cir. 1985).

**b. Qualified Immunity As To Medical Treatment Claims**

The defendants readily acknowledge that the constitutional rights of a prisoner such as the plaintiff certainly *may* be violated if his serious medical needs are met with deliberate indifference on the part of penal authorities charged with providing such care.[27] But, as the Fifth Circuit has held as to these types of claims:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, *the decision whether to provide additional treatment is a classic example of a matter for medical judgment*. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.[28]

The Fifth Circuit has also reiterated:

> Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment.[29]

In addition, the federal constitution does not require that inmates receive optimal care. The fact that an inmate's medical treatment "may not have been the best money could buy" is insufficient to establish a federal violation.[30]

---

27  *Thompson v. Upshur County, Texas,* 245 F.3d 447, 457 (5th Cir. 2001).

28  *Domino v. Texas Department of Criminal Justice,* 239 F.3d 752, 756 (5th Cir.2001)(quotation marks and citations omitted)(emphasis added).  *See also Lauga v. St. Tammany Parish Sheriff's Office*, 2010 WL 1559089, *4 (E.D.La. 2010).

29  *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006)(footnote and quotation marks omitted).

30  *Mayweather v. Foti,* 958 F.2d 91 (5th Cir.1992); *see also Ventry v. Gusman*, 2012 WL 1405862 (E.D.La. 2012)(Knowles, M.J.).

In the instant case, it is readily evident that the plaintiff's need for medical treatment was *not* met with deliberate indifference by either of the defendants. To the contrary, the plaintiff's own Jail medical records clearly reveal that he was examined and/or offered treatment by either Dr. Inglese, Dr. French or another Jail physician on numerous occasions. He was seen personally on clinic visits and he was prescribed medication that the defendants believed to be medically justified and appropriate. He does not claim that either defendant is in any way unqualified or incompetent.

The plaintiff's Jail medical file, attached as Exhibit "C", is replete with evidence of the treatment, diagnostic tests, etc. that the plaintiff received regarding his back/neck pain and for his vision concerns. This documentation includes detailed health assessments and treatment plans, records of prescription medicine disbursement, physician's notes & order arising from the numerous face-to-face visits the plaintiff received, results of clinical tests, and efforts to obtain the records of plaintiff's previous treatment. As Dr. Inglese himself noted on November 11, 2014, the plaintiff had been examined by four different physicians while in the Jail, none of whom agreed with plaintiff's self-diagnosis.[31] Taken as a whole, these records evidence the exact opposite of "wanton disregard." In fact, the plaintiff likely received significantly more medical attention in the Jail than he would have been able to obtain in the civilian world.

According to Dr. Inglese's sworn and completely uncontradicted testimony:

> The medical care received by Mr. Roberts at all times fully complied with the applicable standard of care for institutional/correctional medicine. Specifically, he was never denied any necessary medication and his concerns were always addressed in a timely manner.[32]

---

[31]   Exhibit "C", at p. 27.

[32]   Exhibit "D", at ¶ 9.

In opposition to this conclusion, the plaintiff offers nothing more than his own lay-person disagreement with the defendants' treatment choices and claims that they did not do enough for him.

The courts have consistently concluded that, generally, such matters of professional medical judgment are better left to the medical expertise of physicians rather than to the legal expertise of judges. In fact, federal courts are loath to second-guess such medical decisions in federal civil rights actions.[33] In summary, the determinative issue here is not whether the medical treatment offered to the plaintiff was subpar in some respect, or whether he was dissatisfied with the options presented to him, or whether medical professionals might differ as to the treatment plan; rather, it is only whether his serious medical needs were met with _deliberate indifference_. And this is a _legal_ standard for this Court to decide, not a factual issue for a jury, thus making it especially appropriate for summary judgment.

The plaintiff simply cannot meet his burden of demonstrating either gross incompetence or willful wrongdoing on the part of the defendants. Although the plaintiff must prove that the defendants' actions constituted deliberate indifference, he offers no valid facts whatsoever to support those broad claims. To the contrary, the undisputed relevant facts clearly show that Dr. Inglese and Dr. French acted in accordance with an

---

33   *Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir. 1976)("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); *Castro v. Louisiana*, 2008 WL 5169401, at *4 (E.D.La. 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action.").

objectively reasonable standard, likely far exceeding the level of constitutionally-mandated care.

To summarize, not only did Dr. Inglese and Dr. French not violate the plaintiff's constitutional rights in their treatment, but they responded to his medical needs in a wholly competent and professional manner. Full evaluation and treatment were undertaken. Medication was prescribed and administered. The plaintiff might not agree with what was done for him, but the affirmative, proactive, timely treatment he received was anything but deliberately indifference. Because it is evident that there was no deliberate indifference (or even any level of mistreatment anywhere approaching that standard) in this case with respect to plaintiff's medical treatment, the plaintiff's claims as to Drs. Inglese & French should be rejected, and this matter should be dismissed.

### 3. Plaintiff Failed to Complete the Jail's Administrative Remedies Procedure Prior to Filing This Lawsuit.

As is amply demonstrated by the plaintiff's Jail administrative file (Exhibit "A") and the affidavit testimony of Warden Longino (Exhibit "B"), the plaintiff unquestionably failed to exhaust the administrative remedies available to him at the Jail before filing the instant Complaint. The applicable provision of the Prison Litigation Reform Act of 1996 ("PLRA") reads as follows:

> No action shall be brought with respect to prison conditions under § 1983 of this title or any other law or any other Federal law by a prisoner confined in a jail, prison or other correctional facility until such administrative remedies as are available are exhausted.[34]

---

[34]  42 U.S.C. § 1997e(a). *See also Johnson v. Ford*, 261 Fed.Appx. 752, 755 (5th Cir. 2008); *Campfield v. Tanner*, 2011 WL 4368723, * 2 (E.D.La. 2011).

According to the U. S. Supreme Court, the purpose of the PLRA is "to eliminate unwarranted federal-court interference with the administration of prisons, and thus [it] seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."[35]

In *Underwood v. Wilson*,[36] the Fifth Circuit, while holding that the requirement to exhaust administrative remedies was not jurisdictional, held that if a plaintiff had not exhausted his administrative remedies, dismissal with prejudice was the correct action under the statute. The court pointed out that if a plaintiff filed suit before exhausting his administrative remedies, then plaintiff sought relief to which he was not entitled.[37]

The Fifth Circuit, in *Wendell v. Asher*,[38] specifically held that "prison condition" actions required the application of the exhaustion requirements set forth in § 1997e(a). In *Booth v. Churner*,[39] the U. S. Supreme Court upheld the district court's dismissal of plaintiff's § 1983 action by holding that exhaustion of all remedies was mandatory prior to filing his suit. The Court further held that exhaustion was required regardless of the relief available or sought.

Although *Booth* is a case dealing solely with a prisoner's excessive force claim, the Fifth Circuit has made it clear on several occasions that *Booth* expressed that exhaustion of available remedies are required regardless of the nature of the prisoner's claim about the

---

35   *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387, 165 L.Ed.2d 368 (2006)(internal quotations omitted).

36   151 F.3d 292, 293 (5th Cir. 1998).

37   *See also Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010)(exhaustion is a "threshold" issue); *Magee v. Crowe*, 2011 WL 1437183, ** 5-6 (E.D.La. 2011).

38   162 F.3d 887 (5th Cir. 1998).

39   532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

correctional facility and regardless of the relief the prisoner seeks. For example, in *Wright v. Hollingsworth*,[40] the court declared:

> Quibbles about the nature of a prisoner's complaint, the type of complaint, the type of remedy sought, and the sufficiency or breadths of prison grievance procedures were laid to rest in *Booth.*

The U. S. Supreme Court in *Porter v. Nussle*,[41] made it clear that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." The Fifth Circuit cited *Porter* in its decision in *Clifford v. Gibbs*,[42] affirming another division of this Honorable Court's decision dismissing an inmate's failure-to-protect case for failure to exhaust administrative remedies.

In this case, as detailed by Warden Longino (Exhibit " B"), the Jail had an inmate complaint procedure and an administrative remedy procedure in place at the time the alleged facts occurred, and these procedures are found in the inmate handbook, which is given to every inmate that is booked into the Jail. Warden Longino's affidavit further establishes that both the complaint procedure and grievance procedure are posted in every housing unit at the Jail, including the housing unit where the plaintiff was housed during his incarceration there. *Id.* In addition, the affidavit of Warden Longino establishes that at the time the events giving rise to this lawsuit occurred, copies of the complaint forms and grievance forms were available in all housing areas of the jail, including the area where the plaintiff was being housed. *Id.*

---

40   260 F.3d 357 (5th Cir. 2001).

41   534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

42   298 F.3d 328, 330 (5th Cir. 2002).

Further, Warden Longino's affidavit establishes that although the plaintiff did submit two ARP grievances, which were both responded to by Dr. Inglese, he failed to initiate the second-step review as to either grievance. As a result, and as an undisputable fact, the plaintiff did not exhaust his administrative remedies as required by the Jail ARP concerning his claims that are the subject of this lawsuit prior to filing the lawsuit. *Id.*

The relevant law is crystal-clear that the filing of a grievance simply serves to *initiate* the grievance procedure; however, it does not *exhaust* his remedies as required by 42 U.S.C. 1997e(a). In *Underwood v. Wilson*,[43] the Fifth Circuit defined "exhaust" as "to take complete advantage of (legal remedies)." Clearly, even the filing of a First Step grievance such as was apparently done by the plaintiff here does not constitute exhaustion since § 1997e(a) requires that an inmate "pursue the grievance remedy through conclusion" in a multi-step grievance process.[44]

Another division of this Honorable Court has expressly determined that even the failure to receive a response does not relieve a prisoner from his obligation to pursue all available administrative remedies to their conclusion. In *Cassisi v. St. Tammany Parish Medical Staff, et al.*,[45] the court granted defendants' motion for summary judgment and dismissed plaintiff's case based on plaintiff's failure to exhaust his administrative remedies and held as follows:

> To allow plaintiff, who clearly did not proceed beyond the first step of the multi-step administrative remedy procedure, to proceed directly to federal court would undermine the congressional intent of § 1997e(a).[46]

---

43   151 F.3d 292, 294 (5th Cir. 1998)(*quoting* Webster's New Int'l Dictionary 796, [3rd ed. 1981]).

44   *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001).

45   USDC, E.D.La., No. 01-3452 "J" (1).

46   *Id.*, at Rec. doc. 66, p. 9.

Thus, it is undisputed that despite the plaintiff submitting several grievances concerning his medical care, those grievances were not pursued to the next step of the grievance process. As a result, it is clear that this Court should concur with the *Cassini* court and hold the same in the instant case, grant the defendants' motion for summary judgment, and dismiss plaintiff's suit.

## Conclusion

The evidence unswervingly indicates that not only was the plaintiff provided constitutionally-adequate medical care by the defendants, but that the care he received was of a substantial higher level than required. Thus, there simply is no legitimate basis for the plaintiff's assertions of fault against the defendants pursuant to 42 U.S.C. § 1983. And since § 1983 is the only basis for federal jurisdiction in this case, any remaining state-law claims also should be dismissed.

Respectfully submitted:

**TALLEY, ANTHONY, HUGHES & KNIGHT, L.L.C.**

BY:   /s/ Gary L. Hanes
    CHARLES M. HUGHES, JR. (#14382)
    GARY L. HANES  (#14341)
2250 7th Street
Mandeville, LA  70471
Phone: (985) 624-5010
Facsimile: (985) 624-5306
Email: gary.hanes@talleyanthony.com

Attorneys for Defendants/Movers
R. Demaree Inglese, M.D., and Gary French, M.D.

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 10, 2015, a copy of the foregoing Memorandum of Law in Support of Defendants' Motion for Summary Judgment was filed electronically with the Clerk of Court using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first class mail to the following non-CM/ECF participant: Charles Owens Roberts, (#415495), Riverbend Detention Center, P. O. Box 2300, Lake Providence, LA, 71254.

                                                                                                                           /s/ Gary L. Hanes
                                                                                                                           GARY L. HANES