UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLES OWENS ROBERTS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-1450-SS** |
| **MEDICAL DIRECTORS/DOCTORS MR. R.D. INGLESE AND MR. FRENCH** | |

### ORDER AND REASONS

Plaintiff, Charles Owens Roberts, a state prisoner, filed this civil action pursuant to 42 U.S.C. § 1983 against Drs. R. Demaree Inglese and Gary French. In this lawsuit, plaintiff claims that he was denied adequate medical care at the St. Tammany Parish Prison. All parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[1]

The defendants have filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[2] Plaintiff was ordered to file a response to that motion on or before April 9, 2015.[3] Plaintiff's only filing since the issuance of that order was an incomprehensible statement in support of his complaint.[4]

---

[1] Rec. Doc. 20.

[2] Rec. Doc. 24.

[3] Rec. Doc. 28.

[4] Rec. Doc. 29.

In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

In their motion, the defendants argue, *inter alia*, that the claims against them must be dismissed because plaintiff failed to exhaust his administrative remedies prior to filing suit. For the following reasons, it is clear that the defendants are correct.[5]

The Prison Litigation Reform Act of 1995 ("PLRA"), as amended, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[6]

Federal courts have taken a strict approach to the exhaustion requirement. For example, the United States Supreme Court held that the exhaustion requirement is "mandatory," Porter v. Nussle, 534 U.S. 516, 524 (2002), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," id. at 532. The Supreme Court further held that "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). The United States Fifth Circuit Court of Appeals therefore concluded that "[q]uibbles about the nature of a prisoner's complaint, the type of remedy sought, and the sufficiency or breadth of prison grievance procedures were laid to rest in Booth." Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).

---

[5] Because plaintiff did not in fact exhaust his administrative remedies, the Court need not, and does not, address the defendants' alternative grounds for dismissal.

[6] "As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).

The Fifth Circuit has emphatically held that the mandatory exhaustion requirement cannot be excused by a federal court. The Fifth Circuit stated:

> [T]here can be no doubt that pre-filing exhaustion of prison grievance processes is mandatory. We thus hold that Underwood [v. Wilson, 151 F.3d 292 (5th Cir. 1998),] has been tacitly overruled and is no longer good law to the extent it permits prisoner lawsuits challenging prison conditions to proceed in the absence of pre-filing administrative exhaustion. *District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint.* It is irrelevant whether exhaustion is achieved during the federal proceeding. *Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.*

Gonzalez v. Seal, 702 F.3d 785, 788 (5th Cir. 2012) (emphasis added; footnote omitted). Although the mandatory nature of the exhaustion requirement may seem harsh, it is necessary to accomplish the PLRA's goals. As the United States Supreme Court has explained:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might "filter out some frivolous claims." And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

Porter v. Nussle, 534 U.S. 516, 524-25 (2002) (citations omitted).

In support of their motion, the defendants have submitted the affidavit of Warden Gregory Longino, in which he outlined the Administrative Remedy Procedure put in place by the St. Tammany Parish Sheriff's Office:

1. Since July 26, 1990, he has been employed by Rodney J. Strain, Jr., in his capacity as Sheriff of St. Tammany Parish ("Sheriff Strain"), and Sheriff Strain's predecessor in office, under the auspices of the St. Tammany Parish

Sheriff's Office ("the STPSO").  He currently holds the rank of Major with the STPSO.

2. At all relevant times herein, Affiant has been assigned the post of Warden of the St. Tammany Parish Jail ("the Jail").  In that role, he has direct supervisory authority over and responsibility for all operations of the Jail – including but not limited to all decisions regarding the handling of inmate complaints and issues of inmate discipline – subject only to the direction and supervision of Sheriff Strain and other superior officers within the STPSO.  As a result, he has personal knowledge of all facts set out below.

3. In 1996, the STPSO adopted an Administrative Remedy Procedure ("ARP") that permits inmates to lodge grievance complaints.  The procedure allows any inmate – whether they are being held by federal or state agencies after conviction or are pre-trial detainees – to request in writing a review of a complaint the inmate has about a policy, condition or incident that occurs within the jail.

4. The Jail's ARP was in place and functioning in the time-period of March through June 2014, when the incidents giving rise to this lawsuit occurred.

5. A summary of the ARP is contained in the Inmate Handbook that is given to every inmate who is booked into the Jail.  A photocopy of that summary, as it appears in the handbook, is attached to and incorporated into this Affidavit.

6. A copy of the complete ARP can also be found in the Jail law library, where access is available to all inmates and was available to all inmates in July of 2012.

7. The ARP, including the inmate complaint procedure, was posted in every housing unit of the jail in January of 2013.  Blank ARP forms were available in every housing unit and made easily accessible to all inmates.

8. An inmate can also ask any Jail deputy for a copy of the blank forms.

9. In lieu of the blank forms, inmates may submit a written communication containing the words, "This is a grievance through the ARP" or something to that same effect.

10. Under the procedure, a grievance must be filed within 90 days from the date of the incident giving rise to the grievance.  Any grievance filed more than 90 days after the incident is rejected as untimely.

11. The written grievance first is forwarded to the First Level Respondent, who must respond within 15 days of receipt of the grievance. This process is designated as the First Step Review.

12. If an inmate is not satisfied with the results of the First Step Review, the inmate may appeal the response to Affiant, in his role as Warden, within five days of the inmate's receipt of the First Step Review results. The Warden has 25 working days to reply to the appeal. This step is designated Second Step Review.

13. If an inmate is not satisfied with the results of the Second Step Review, the inmate may appeal that result to the Sheriff within five days of the inmate's receipt of the Warden's response. The Sheriff has 40 days to reply to this appeal, which is designated Third Step Review.

14. If an inmate does not receive a timely response to either of the first two steps of the process, the inmate nevertheless is required to follow through to the next step of the process.

15. Inmate Charles Owens Roberts (DOB xx/xx/58; D.O.C. No. 415495) was booked into the Jail at approximately 8:30 am on Thursday, March 20, 2014 and he was released into the custody of Lt. Styron Allen of the East Carroll Parish Sheriff's Office, at 9:00 am on Tuesday, January 6, 2015.

16. During this period of incarceration, Mr. Roberts initiated the ARP on only two occasions.

17. Because both grievances concerned issues related to the Jail's Medical Department, they were both referred to Dr. Demaree Inglese, the Director of that Department.

18. The documentation contained in Mr. Robert's Jail administrative file indicates that Dr. Inglese responded to one of the grievances, using the prescribed form, on April 30, 2014 and that Mr. Roberts acknowledged receipt of the response by his signature on the form on that same date.

19. The documentation contained in Mr. Roberts' Jail administrative file indicates that Dr. Inglese responded to the other grievance, using the prescribed form, on May 22, 2014 and that Mr. Roberts acknowledged receipt of the response by his signature on the form on that same date.

20. On neither of the occasions described in the two preceding paragraphs did Mr. Roberts ever initiate the next step of the ARP, the Second Step Review.

21. As a result, Mr. Roberts did not exhaust his administrative remedies as required by the Jail ARP concerning his claims that are the subject of this lawsuit prior to filing the lawsuit.[7]

In that it is undisputed that the plaintiff did not pursue his claims past the first step of the ARP, it is obvious that he failed to exhaust his administrative remedies. As the United States Fifth Circuit Court of Appeals has noted: "'Exhaust' is defined as 'to take complete advantage of (legal remedies).'" Underwood v. Wilson, 151 F.3d 292, 294 (5th Cir. 1998) (quoting Webster's New Int'l Dictionary 796 (3rd ed. 1981)). As a result, administrative remedies are not exhausted unless a prisoner pursued his grievance through the *conclusion* of a multi-step administrative remedy procedure. Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001); see also Hemphill v. Inglese, 359 Fed. App'x 537, 540 (5th Cir. 2010) ("[C]omplying with the first step of an administrative grievance procedure will not suffice to exhaust administrative remedies if the grievance procedure contemplates additional steps.").

Because the plaintiff failed to pursue his administrative remedies to their conclusion as required by federal law, thereby giving the defendants a fair opportunity to consider and possibly resolve the claims without litigation, it is not appropriate for this Court to consider those claims. Therefore, plaintiff's claims must be dismissed.

Accordingly,

---

[7] Rec. Doc. 24-4.

**IT IS ORDERED** that the defendants' motion for summary judgment, Rec. Doc. 24, is **GRANTED** and that plaintiff's claims are **DISMISSED WITH PREJUDICE**.[8]

New Orleans, Louisiana, this twenty-first day of April, 2015.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[8] A dismissal for failure to exhaust is generally without prejudice; however, because any new grievance filed by plaintiff would be time-barred under the STPSO administrative remedy procedure and his failure to exhaust therefore cannot be cured, dismissal with prejudice is appropriate in this case. See Marsh v. Jones, 53 F.3d 707, 710 (5th Cir. 1995) (dismissal with prejudice warranted when administrative relief is time-barred or otherwise precluded); Myrick v. Strain, Civ. Action No. 12-2962, 2013 WL 5232422, at *6 n.14 (E.D. La. Sept. 13, 2013).